## No. 2459.

## James M. McPherson *v.* James Johnson et al.

1. **Vendor and Vendee.**—The vendee in an executory contract for the sale of land, who has not paid the purchase money, must at least offer to pay before he can enforce specific performance by the vendor. The fact that limitation has run on the purchase money notes is immaterial; the ob-

ligation to pay remains, though the right of action on the notes may be barred, and payment must be made before the transfer to the purchaser of the title can be enforced.

2. Same.—When purchase money notes for land under an executory contract for its sale remain unpaid, the vendee, if in possession, can not defeat the suit of the vendor for the recovery of the land, nor if out of possession can he recover against the vendor or against any one holding under him.

3. Same.—If, after such default in payment as would authorize a vendor to rescind an executory agreement for the sale of land, he should sue for the unpaid purchase money, he thereby loses his right to rescind the contract, provided the vendee avails himself of the privilege of paying the debt. The contract, however, in such an event, still remains executory, and the vendee can not by pleading limitation defeat the suit for the debt, and yet hold the land when he has refused to pay the contract price.

4. Costs.—The statute which entitles one who will make oath that he is too poor to pay costs (art. 1438) to have all necessary process without security, does not relieve the affiant from liability for costs incurred by him, or for all costs in the suit, if judgment should be rendered against him.

5. Rules of the Court—Judgment.—An amendment of a judgment, under article 1355, Revised Statutes, which is made on the last day of the term, but which is of a character authorized by statute to be made at any time, is not, when the case was first submitted for determination by the judge on the law and the facts more than three days before the close of the term, violative of Rule 65 for the government of district courts.

Appeal from Washington. Tried below before the Hon. I. B. McFarland.

*Bassett, Muse & Muse,* for appellant, cited, Hild v. Linne, 45 Texas, 476, 477; Scarborough v. Arrant, 25 Texas, 129, 136; Gregg v. English, 38 Texas, 139, 148; Tom v. Wolhoefer, 61 Texas, 277, 280, 281; Revised Statutes, art. 438; 1 Daniel's Chancery Practice, 47; Rule 65, 47 Texas, 628.

*Garrett, Searcy & Bryan,* for appellees, cited Norvell v. Phillip, 46 Texas, 177; Fleming v. Seeligson, 57 Texas, 532; Harris v. Catlin, 53 Texas, 8; Lander v. Rounsavell, 12 Texas, 197; Jackson v. Palmer, 52 Texas, 434; Coddington v. Wells, 59 Texas, 49; Harris v. Catlin, supra; Baker v. Ramey, 27 Texas, 52, 59; Clay v. Hart, 49 Texas, 438; Dunlap v. Wright, 11 Texas, 579, 605; Burgess v. Williams, 50 Texas, 397; Burson v. Blackley et al., 67 Texas, 11; Fievel v. Zuber, Id., 275; Hannay v. Thompson 14, Texas, 142; Loving v. Milliken, 59 Texas, 427;

Calhoun v. Lumpkin, 60 Texas, 190; Duke v. Reed, 64 Texas, 615; 1 Jones on Mort., section 715; 2 Jones on Mort., section 1205.

GAINES, ASSOCIATE JUSTICE. This was an action of trespass to try title in the statutory form, brought by McPherson, who is appellant, against appellees Johnson, J. R. Baldridge and others, as defendants. Johnson pleaded not guilty and answered specially, that he held a part of the land under warranty deeds from his co-defendant, J. R. Baldridge and one Joseph Baldridge, and prayed that they be made parties defendant to the suit, and that in the event the plaintiff recovered the land claimed by the respondent he have judgment over against his warrantors. J. R. Baldridge also pleaded not guilty and answered in substance, that as agent for his brother, Joseph Baldridge, he caused suit to be brought on a note made by plaintiff to his brother for the purchase money of the land in controversy; that administration was taken out on the estate of plaintiff, and that in pursuance of an order of the county court of Washington county the administrator sold the land, and that at the sale he became the purchaser for the use and benefit of his brother—his bid, less costs and commissions, which he paid and charged to the latter, being credited on his brother's debt; that the sale was confirmed and the deed taken in his own name for the convenience of disposing of it on the latter's account.

Joseph Baldridge also intervened and alleged that he sold the land to plaintiff, executing to him a deed which expressly reserved a lein for the payment of the purchase money; that plaintiff executed to him a note for the price of the land upon which suit was instituted in the District Court of Washington county for a foreclosure of the lein; that during the progress of the case plaintiff became a fugitive from justice, and the impression was created that he had died; that administration was taken out on his estate, and the administrator became a party to the suit, which resulted in a judgment in his favor, foreclosing his lein, and that the judgment was certified to the county court for observance. He further alleged the sale and conveyance of the land by the administrator to J. R. Baldridge for his benefit, as averred in the answer of the latter and prayed that defendants have judgment, or if this could not be granted that his original suit against plaintiff in the district court be consolidated with this cause and that he have judgment for his debt and enforcing his lein. To these pleadings plaintiff excepted, and

among other grounds of demurrer interposed the statute of limitation to intervenor's alternative prayer for judgment on his note. The exceptions were overruled and this ruling is asssigned as error.

We are of opinion that the exceptions were properly overruled. According to the averments in the answer of J. R. Baldridge, and in the plea of intervention, there remained about one hundred acres of the land after the conveyance to Johnson, to which the intervenor had title, and it was proper to allow him to make himself a party to the suit in order to protect his interest. Under the rule of decision in this court, the contract pleaded was executory. The plaintiff made no offer in his pleadings to pay the purchase money. On the contrary, he set up the statute of limitations to the intervenor's prayer for judgment on his note. The vendee in an executory contract who has not paid the purchase money, must, at least, offer to pay, in order to enforce the agreement. The vendor's right of action on his debt may be barred, and his privilege of election thereby lost, but the vendee is not relieved of his obligation to pay the debt, if he would hold the land. The debt remains though the right of action be barred (Fievel v. Zuber, 67 Texas, 275); and without an offer to pay it, the vendee if in possession can not defeat the suit of the vendor for the recovery of the land; nor if out of possession can he recover against the vendor or any one holding under him. We think these principles well settled in this court, and that they need no further discussion. (Harris v. Catlin, 53 Texas, 8; Jackson v. Palmer, 52 Texas, 434; Baker v. Ramey, 27 Texas, 53; Dunlap v. Wright, 11 Texas, 604; Burgess v. Millican, 50 Texas, 397.) It is unnecessary for us to consider what would have been appellant's right had he made an offer to pay.

It is insisted, however, that plaintiff's vendor having elected to bring suit upon the note, thereby affirmed the contract, and lost his right to claim the land. But we take this to be the rule: If, after such default as justifies the vendor in rescinding the sale, he proceeds for the price, he loses his right of rescission; provided, the vendee avail himself of his privilege to pay the debt. But the contract still remains executory, and the latter can not by pleading limitation defeat the action for the debt, and still claim the land under a contract with which he has refused to comply. The case of Harris v. Catlin, supra, is full authority for the proposition that an unsuccessful attempt to enforce pay-

ment of the purchase money will not defeat the vendor's recovery of the land, after a subsequent refusal by the vendee to pay. In that case, as in this, no part of the purchase money was paid, and in that respect is distinguishable from Coddington v. Wells, 59 Texas, 49. The distinction is drawn in the opinion in the later case.

It is further claimed that after the conveyance of a portion of of the land to Johnson, intervenor was no longer in a position to demand a payment of the purchase money or to maintain a suit therefor. But if the plaintiff had the right to recover the land as against Johnson and his co-defendants, as he claims in his suit, it was not necessary that intervenor should make any further title, and the conveyance to Johnson did not stand in his way. The argument comes back to this: that in order to recover the land, he must have offered to pay the consideration; his plea of limitation was a distinct refusal to do this, and therefore the court did not err in holding in effect that he could not claim under a contract of sale with conditions of which he had refused to comply.

The plaintiff having been ruled to give a bond for the costs of suit, filed an affidavit of his inability to give security therefor. The court gave a judgment against him for costs, and this is assigned as error. The act of May, 1846, provided that "any person, whether plaintiff or defendant, who shall make affidavit before the clerk that he is too poor to pay the fees of office, shall be entitled to receive from such clerk all such process as will enable him to prosecute or defend his suit free of costs." (Pas. Dig., art. 1429.) The corresponding provision in the Revised Statutes does not say that he shall have his process free of costs, but makes it the duty of the clerk, after the affidavit is filed, "to issue all process and to perform all other services required of him in the same manner as if the security had been given." (Rev. Stats., art. 1438.) This change of language clearly manifests that it was the intention of the Legislature, in the later provision, merely to permit the affiant to prosecute his suit without giving security, and not to release him from his liability either for his own costs, or for all costs in the event the judgment should go against him.

The third error assigned is as follows: "The cause having been submitted for trial to the judge on the law and the facts more than three days before the close of the term, the court

erred in rendering its judgment on the last day of the term without the plaintiff's consent and over his objection."

When a proper case is presented, it will be necessary to decide whether a judgment will be reversed for a violation of the rule relied upon in this assignment, without showing that some injury has accrued from such violation to the appealing party. Here, however, the judgment was rendered on the twenty-eighth of April, and was amended on the last day of the term, which was the thirtieth of that month. The amendment consisted in inserting the name of one of the defendants in the judgment which had been inadvertently omitted in the original entry on the minutes. The statute provides that such amendment may be made at any period during term time by the court, and by the judge during vacation. (Rev. Stats., art. 1355.) We can not construe the rules of the Supreme Court as being intended to affect in any manner this plain provision of the statute.

In his conclusions the judge found certain facts which were not set up in defendant's or intervenor's pleadings; and this is assigned as error. The finding was unauthorized, but the facts so found were not necessary to support the judgment, and hence the action of the court affords no ground for a reversal.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered January 13, 1888.